CLARK & LEMON, Respondents, v. BROWN, Appellant.

25  559
53a 312
25  559
56a 517
25  559
122 176
25  559
74a 353

1. The mechanics' lien act of 1845 (R. C. 1845, p. 733) regulated proceedings instituted in St. Louis county to enforce a mechanic's lien in cases where the materials were furnished or the work performed under a contract with the owner.

2. Where the owner of a building, upon which there is a mechanic's lien for materials furnished under a contract with himself, conveys the premises to

Clark v. Brown.

a purchaser before the institution of a suit to enforce the lien, no judgment can be rendered, in a suit to enforce the lien commenced by *scire facias*, unless the purchaser be made a party to the record ; nor if, in such case, suit be brought in the ordinary form against the vendor, could an execution issue against the property unless a *scire facias* shall have first issued and been served upon such purchaser.

*Appeal from St. Louis Land Court.*

*J. R. Barrett*, for appellant.

I. The description of the property was insufficient.

II. Blood should have been made a party. He was owner when the demand accrued, when the lien was filed, and when the suit was brought.

III. No other judgment could have been entered in this case than a judgment against the property. The owner should have a hearing. The transfer from Brown to Blood, made subsequent to the contracting for furnishing the materials, and the actual furnishing of the same, would have been no defence to an action in the ordinary form against Brown ; but it is a defence to an action against the property, if Blood, the owner, be not made a party. Hence the instruction given for plaintiffs was erroneous.

*Hart & Jecko*, for respondents.

I. The court ought not to have required Blood to be made a party. Plaintiffs had no contract with him. The materials were furnished under a contract with Brown and with him alone. The instrument of writing read in evidence shows that Blood bought out Brown's interest with knowledge of the demands against the building. No act of Brown or Blood could deprive plaintiffs of their lien on the building.

RICHARDSON, Judge, delivered the opinion of the court.

This was a proceeding by *scire facias* to enforce a lien for materials. On the 31st of August, 1850, the plaintiff filed in the clerk's office of the circuit court a statement of their demand, verified by affidavit, and a *description* of the property upon which the lien was intended to apply. The statement

alleged that the plaintiff's demand amounted to $290.92 for materials furnished by them and used by Brown, under contract with him, in building the house described, which was erected and owned by Brown upon land belonging to Strother's heirs. It appears from the account, made part of the statement, that the lumber was furnished at different times from May 9th to July 31st, 1850, inclusive. A *scire facias* was sued out on the 22d October, 1850, containing the usual recitals, and stating that it appeared Brown was the owner of the building. At the return term of the writ the defendant filed his plea, and afterwards at the April term, 1852, it was stricken out on motion, and the court ordered that " the *scire facias* be amended by bringing in J. H. Blood as a party to the suit." At the November term, 1853, the plaintiff dismissed the cause as to Blood, and afterwards, during the same term, Brown filed his answer, averring, among other things, that the property described in the *scire facias* was owned by Blood when the plaintiffs' demand accrued and when they filed their lien.

On the trial evidence was offered by the plaintiffs tending to prove that the defendant owed them the said account, and that it accrued for materials furnished by them under contract with Brown and used by him in building the house mentioned in the *scire facias*, and that the building was owned by him at the time.

On the part of the defendant a lease was read in evidence executed by Clark to Brown, dated February 20th, 1850, from which it appears that Clark had leased from Mrs. Strother a portion of land, and then subleased to Brown for the term of twenty years, commencing November 7, 1849, the premises on which the building was erected; also an assignment of said lease and " the building and improvements on the premises then erected and in process of erection and to be completed" by Brown to John H. Blood, dated 26th July, 1850, which was duly acknowledged and filed the next day for record in the proper office.

The court substantially instructed the jury that the plain-

tiffs were entitled to recover whether or not Blood became the owner of the property before the filing of the lien or the commencement of the suit. The jury found for the plaintiffs the amount of their claim with interest, and thereupon the court rendered judgment that—it appearing the demand, upon which the action was founded, was properly filed as a lien against the property described in the *scire facias*, and that part of the property could not be separated from the residue without great injury to the whole — the plaintiffs " recover of said defendants the damages aforesaid, in form aforesaid, as assessed against said defendant and against the property above described," with the award of execution, &c.

The questions in this case must be determined by the local act concerning liens in St. Louis county of 1843, and the general act concerning mechanics' liens of 1845 ; and though the provisions of the special act must prevail when they are in conflict with the general law, it will be found that the person who performs work or furnishes materials under a contract with the owner must employ the means for the enforcement of the lien provided in the general act ; for the special act does not furnish the machinery for that purpose. (3 Schulenburg v. Gibson, 15 Mo. 288.)

After a party has performed work or furnished materials for a building under a contract with the proprietor thereof, and proceeded as directed by the second section of the act of 1845, he can pursue either of two remedies provided in sections seventh and eighth.

First, as to remedy under the seventh section, " he may commence his suit in the ordinary form, and shall have judgment against the original debtor for the amount that shall be found due to him, and shall have the liberty of taking his execution against such a proportional part of the property charged with the lien as his demand bears to the whole amount of liens that are charged upon the property under this act, which proportional part shall be decided by the court, and also against other property of the defendant." This section gives him a general judgment, and in addition a

special *fieri facias* against the property charged with the lien, on one of two conditions expressly named in these words: " But no execution shall issue against the property charged with such lien unless the defendant shall have owned or possessed the said property at the time of the commencement of the said suit, or unless a *scire facias* shall first have issued and been served upon the owner or possessor of such property, requiring him to appear and show cause why judgment should not be entered up and execution had against such property."

The policy and justness of this provision need no vindication. The *lis pendens* is notice to the world that a lien is claimed against particular property, and the law forbids that any alienation or encumbrance of it by the debtor should defeat the meritorious claim of the person who, by the contribution of his labor or materials, has enhanced its value ; and hence the judgment is against the property, besides the general judgment if the defendant owned or possessed it at the commencement of the suit.   But the law repudiates the idea of condemning the property of one man to pay the debt of another, without giving him an opportunity in court, upon due service of process, of showing that the claim ought not to be asserted against his property ; and under this section the plaintiff will take nothing but a general judgment unless the defendant owned or possessed the property at the commencement of the suit, or unless a *scire facias* shall first have issued and been served on the owner or possessor thereof.

Secondly, as to the remedy under the eighth section.   The papers which the plaintiff files with the clerk, if properly prepared and filed in time, stand in place of a declaration and are treated as a record (Cornelius v. Grant, 8 Mo. 59) ; so that an original summons is dispensed with, and the *scire facias* is the first process.   The word " whom" in this section, evidently, from the context and spirit of the act, was intended for " *which*," and the section should read thus : " In all cases under this act it shall be lawful for the plaintiff to proceed by *scire facias* against the original debtor, and against all and every person or persons owning or possessing the property

against *which* he wishes to proceed; but no judgment to be rendered on the *scire facias* shall authorize the issuing of any execution except against the property charged with said lien, or such part thereof as the court shall direct." If a party proceeds under this section, he can not take a personal judgment against the original debtor; but, in any event, can only have a judgment against the property charged with the lien. It is essentially a proceeding *in rem*, that seeks to condemn the property to satisfy a legal claim against it. And, as there can be no general judgment against the original debtor, if he is absent or insolvent, or is indifferent about protecting his vendee, he may have neither motive nor interest to defend the suit, or may even be in collusion with the plaintiff; and therefore the plainest dictates of justice require that the real owner, whose property it is proposed to condemn to pay another's debt, should at least have the opportunity of being present to show that no lien lawfully exists against his property.

There is nothing in the seventh and eighth sections of the act of 1845 in conflict with the sixth section of the local act of 1843, which declares " that the lien for work and materials as aforesaid shall be preferred to all other encumbrances which may be attached to or upon such building or other improvements on the ground, or either of them, subsequent to the commencement of such building or improvements;" but they direct the mode of bringing before the court all parties interested in the property at the time of the commencement of the suit.

This proceeding was commenced by *scire facias*, and the proof shows that Blood was the purchaser from the defendant, with a recorded deed, not only before the suit was begun, but before the last of the materials were furnished, and, in our opinion, no judgment could be rendered in the case without the presence of Blood on the record.

It it be said that Brown owed the debt, and had no right to object to the judgment being rendered, it may be replied that he ought to have paid it, and the argument would be unan-

swerable, if the proceeding affected nobody but himself; but if the court had no authority, as the case stood, to render a judgment against Blood's property to pay Brown's debt, any party to the record had a right to object.

The other judges concurring, the judgment will be reversed and the cause remanded.